JOHN A. HARBACH, PLAINTIFF IN ERROR, V. LORIN MILLER, DEFENDANT IN ERROR.

Ejectment: ACTION ON UNDERTAKING GIVEN ON REMOVAL OF CAUSE TO SUPREME COURT. Action on a supersedeas undertaking in an ejectment case, taken to the supreme court on error. The language of the undertaking is, "That the said Harbach during the possession of said property, will not commit or suffer to be committed any waste thereon, and if the judgment be affirmed, he, said Harbach, will pay the said Miller the value of the use and occupation of the property from the date of this undertaking until the delivery of the possession," etc. Evidence on the trial not disputed, that at the date of the undertaking the property consisted of one and six or seven-tenths acres of

land near the center of a large, enclosed, and cultivated field without improvements, except a root-house of but nominal value; but sometime afterwards parties not in privity with either party to the said undertaking, erected two small frame dwelling houses on said premises. The trial court instructed the jury *inter alia* as follows: "2. The fact that the houses in question may not have been on the premises, or been fit for occupancy at the time when the bond was given, should the jury find such to be the fact, does not prevent the plaintiff from recovering the value of the rent and occupation, as found by the jury, after the erection of the houses, and while fit for occupancy," and refused instructions requested by the defendant to the opposite effect. *Held*, error and a new trial awarded.

ERROR to the district court for Douglas county. Tried below before SAVAGE, J.

*John D. Howe*, for plaintiff in error, cited Tyler on Ejectment, etc., 848. *Coulter's Case*, 5 Coke R., 30. *Green v. Biddle*, 8 Wheat, 81–82. *Jackson v. Loomis*, 4 Cow., 168. *Hylton v. Brown*, 2 Wash. C. C., 165. Sedwick Meas. Dam. (126), 141, and cit. *Dothage v. Stuart*, 35 Mo., 251. *Morrison v. Robinson*, 31 Pa. St., 456. *Worthington v. Young*, 8 Ohio, 401. *Harrall v. Gray*, 12 Neb., 544. Bouvier's L. Dic., *Mesne Profits*.

*E. Wakeley*, for defendant in error, cited *Roswell v. Blake*, 2 Pick., 505. *Denny v. Osborn*, 4 Cow., 329. *Schlemmer v. North*, 32 Mo., 206. *White v. Moses*, 21 Cal., 34.

COBB, J.

The question in this case arises upon certain instructions given and refused, and is most fully presented by the instruction numbered 2, given at the request of the plaintiff, in the following words: "The fact that the houses in question may not have been on the premises or been fit for occupancy at the time when the bond was given, should the jury find such to be the fact, does not prevent the

plaintiff from recovering the value of the rents and occupation, as found by the jury, after the erection of the houses and while fit for occupancy." It appears from the record, that at the November, 1873, term of the Douglas county district court, the defendant in error obtained a judgment against the plaintiff in error for the possession of the block of land in question. On the 2nd day of January, 1874, the plaintiff in error, for the purpose of staying the issuance of a writ of possession on said judgment until the same could be reviewed in this court, entered into an undertaking with security to the defendant in error, in the penal sum of five hundred dollars, that the said plaintiff in error, during the possession of said property, would not commit or suffer to be committed any waste thereon, and if this judgment should be affirmed, he, said plaintiff in error, would pay to said defendant in error the value of the use and occupation of the property from the date of the said undertaking until the delivery of the possession pursuant to the judgment, etc. The judgment was affirmed in this court, and the possession of said premises delivered pursuant thereto on the 24th day of April, 1875 ; and this suit was brought on the said undertaking against the plaintiff in error and his security, for the value of the use and occupation of the property.

It appears from the testimony that at the time of the execution of the undertaking, the premises consisted of one and six or seven-tenths acres of agricultural land in an enclosed field of far greater extent, without improvements except a root-house of merely nominal value. That the said premises were then occupied for gardening purposes by lessees, not under the plaintiff in error, but under a grantee in the second degree of the title thereto, conveyed by the plaintiff in error some years before the giving of the undertaking. The houses referred to by the court, in its instructions, were not in existence at the time of the giving of the undertaking, but were placed on the

premises and made inhabitable between the first day of February and the first day of April, 1874. According to the evidence, the rental value of the premises, including the two houses, was from ten to twenty dollars per month. Without the houses, in the condition in which it was at the date of the undertaking, its rental value was from two and a half to five dollars per acre per annum.

In the brief time at our command we have not been able to find a single adjudicated case which, to our mind, covers the point involved in this case. It is no doubt well settled, independent of any legislation, in the nature of occupying claimants acts, that in an action for mesne profits against a *bona fide* purchaser, he will be allowed, against the plaintiff, in mitigation of damages, the value of permanent improvements made in good faith to the extent of the rents and profits claimed by the plaintiff. But the plaintiff in error does not bring himself within the benefit of that rule, nor could he, for the reason that the improvements were not made by him but by another person, in whose shoes he is made to stand by force of the contract of the undertaking. While the undertaking estops him to deny the possession of the premises, yet as he was not in possession, in point of fact, he could not avail himself of the benefit of these improvements.

While this action is one in the nature of an action for mesne profits, it is not that. It is an action for the breach of a special contract. The fact that the contract is a statutory one, and somewhat compulsory, does not change its nature as a contract, nor the rules for ascertaining the rights of the parties thereto upon its breach. It is to be construed by the same rules as other written contracts between parties. If words are used in a doubtful sense as to their meaning or application, courts should, if possible, give them the meaning and application intended and understood by the parties themselves at the time of making the contract.

The supreme court of Vermont, by Judge REDFIELD, in

the case of *Gunnison v. Bancroft*, 11 Vt., 490, state the rule as follows: "Language used by one party to a contract is to receive such a construction as he at the time supposed the other party would give to it, or such a construction as the other party was fairly justified in giving to it, which is the same thing."

To the same effect is the following: "Every treaty" says Vattel, "should be interpreted as the parties understood it when the act was prepared and accepted." Note to Kent's Commentaries, vol. 2, p. 557.

To apply this rule to the case at bar: The subject-matter was the one and six or seven-tenths acres of land, the possession of which had been adjudged to the defendant in error; the object of the undertaking was to delay the carrying of said judgment into effect until the same could be reconsidered in the appellate court, the language—"would pay * * * the value of the use and occupation of the property."

What property did the plaintiff in error have a right to suppose the other party would construe this language to mean, or what meaning or construction was the defendant in error fairly justified in giving to it? Certainly none other than the one and six or seven-tenths acres of land, the block of ground which had been and still was in litigation between the parties. This is as the parties understood it when the act was prepared, and so the treaty should be interpreted.

We therefore reach the conclusion that the district court erred in giving the instruction No. 2 of the plaintiff's requests, and in refusing to give the requests of the defendant containing the opposite principle as the law of the case.

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.